Priority
Send ✓
Enter
Closed
JS-6 ✓ NO
JS-2/JS-3
Scan Only



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUAN CATALAN, et al., | No. CV 04-6233 CBM (SHx) |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF LOS ANGELES, et al., | |
| Defendants. | |

The matter before the Court, the Honorable Consuelo B. Marshall, Judge, presiding, is Defendants' Motion for Summary Judgment.

**JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. §1331.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of the allegedly wrongful arrest and five month incarceration of Plaintiff Juan Catalan. On November 23, 2002, Mario Catalan, Juan's brother, and Jose Ledesma, a member of the Vineland Boys gang, were charged with the murder of Enrique Acosta. Ledesma was also charged with the murder of Christian Vargas. Martha Puebla was a witness to the Vargas murder. Puebla testified at the preliminary hearing regarding the Vargas murder. Prior to the preliminary hearing LAPD officers searched the residence shared by Mario and Juan Catalan during the investigations of the murders and found marijuana

and methamphetamine. Juan Catalan was arrested and drug charges were subsequently brought against him. After nine days in custody, Juan was released on his own recognizance on December 9, 2002.

Eleven days after Puebla testified at the preliminary hearing, she was murdered in front of her house. Juan Ibañez, another member of the Vineland Boys gang, witnessed the murder and gave a description to the police. The police also received a separate tip, and based on that information, showed Ibañez, a six-pack photo line up including Juan Catalan's photo. After first identifying two other people with little or no resemblance to Catalan, Ibañez picked Catalan. The police presented evidence to the prosecutor who filed a complaint and Catalan was subsequently arrested on August 12, 2003. The police pulled over Catalan's car which contained Juan, Alma Oseguera, his girlfriend, and Mariah Catalan, their daughter, and arrested Juan for murder. While arresting Juan, the police handcuffed Oseguera and detained her. Mariah was taken out of the car and kept away from Oseguera.

On the day of his arrest, Juan informed the police that he had been at a Los Angeles Dodgers baseball game at the time the murder had taken place. His alibi was later corroborated when he was seen in footage filmed for an episode of HBO's "Curb Your Enthusiasm" television show. Nonetheless, he remained in police custody for the next several months. A preliminary hearing was held on December 17, 2003 and the judge found that there was no probable cause to hold Catalan for trial in light of the evidence, including Catalan's alibi. Subsequently, on January 8, 2004, a sentencing hearing was held regarding his guilty plea for the drug charges. The judge sentenced Catalan to 160 days and granted him credit for the time served on the murder charge.

On July 29, 2004, the instant action was filed by Plaintiffs Juan Catalan, as well as his parents Magdalena and Mario Catalan, his daughters Melissa and

1  Mariah Catalan, and his girlfriend Oseguera. Plaintiffs state causes of action
2  arising under 42 U.S.C. § 1983 for (1) unreasonable seizure, (2) conspiracy to
3  violate civil rights, (3) interference with familial relationships, (4) malicious
4  prosecution, (5) abuse of process, (6) municipal liability, and (7) failure to train
5  and supervise. Plaintiffs also included state law claims for (1) false imprisonment,
6  (2) violations of the Bane Act, (3) intentional infliction of emotional distress, (4)
7  negligence, and (5) defamation.

8    Defendants filed their motion for summary judgment on January 3, 2006.
9  On February 3, 2006, Plaintiffs filed their first amended complaint ("FAC").[1]
10 Plaintiffs argued that Defendants' motion for summary judgment was moot in
11 light of the FAC, however, Defendants responded, and the Court agreed, that the
12 FAC contained almost all of the same allegations and claims as the original
13 complaint. On February 6, 2006, Plaintiffs filed their opposition to Defendants'
14 summary judgment along with a declaration pursuant to Fed. R. Civ. P. 56(f).
15 Defendants filed their reply.

16                               **LEGAL STANDARD**

17    Summary judgment against a party is appropriate when "the pleadings,
18 depositions, answers to interrogatories, and admissions on file, together with the
19 affidavits, if any, show that there is no genuine issue as to any material fact and
20 that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.
21 56(c). A party seeking summary judgment bears the initial burden of informing
22 the court of the basis for its motion and of identifying those portions of the
23 pleadings and discovery responses which demonstrate the absence of a genuine
24 issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where
25 the nonmoving party will have the burden of proof at trial, the movant can prevail

---

[1] The FAC substituted in the name of six individuals in place of Doe defendants. The FAC also removed all plaintiffs other than Juan Catalan from the state law claims.

-3-

merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

## DISCUSSION

### I. Claims for Which Plaintiffs Do Not Oppose Summary Judgment

As to a number of Plaintiffs' claims for which Defendants moved for summary judgment, Plaintiffs explicitly stated in their opposition that they did not oppose Defendants' motion. Plaintiffs' explicit non-opposition applied to (1) Section 1983 claim alleging a conspiracy to violate Plaintiffs' civil rights; (2) Section 1983 claim alleging abuse of process; and (3) state law claim for defamation. In addition, while Plaintiffs did not explicitly state their non-opposition, Plaintiffs did not provide a response to Defendants' motion with regard to the state law claims for (1) intentional infliction of emotional distress and (2) negligence. Plaintiffs identify no material facts in dispute that prevent the Court from granting Defendants' motion as to these claims.

Accordingly, the Court GRANTS Defendants' motion for summary judgment with regard to Plaintiffs' claims for (1) Section 1983 conspiracy to violate civil rights; (2) Section 1983 abuse of process; (3) defamation; (4) intentional infliction of emotional distress; and (5) negligence.

///

///

## II. Plaintiffs' Section 1983 Claim for Unreasonable Seizure

Plaintiffs allege that Defendants unreasonably seized Plaintiffs Juan Catalan, Alma Oseguera, and Mariah Catalan. With respect to Oseguera and Mariah Catalan, Defendants argue that neither were seized by any named defendant and that both seizures were lawful. However, subsequent to the filing of the motion, Plaintiffs amended the complaint to add the true names of officers, some of whom are identified by Plaintiffs as those who participated in the detention of Oseguera and Mariah Catalan. Additionally, Plaintiffs provide evidence identifying Detective Pinner as one of the individuals who directed that Oseguera remain in handcuffs during her detention. Plaintiffs further allege that she remained in handcuffs for approximately two hours. Oseguera Decl. ¶16. Plaintiffs also provide evidence that Mariah Catalan, the daughter of Juan Catalan and Oseguera, was in her car seat at the time of the arrest, was removed from the car, and deprived of her mother's care. *Id.* ¶¶6-7. While Defendants dispute the length of time that Oseguera remained in handcuffs, Plaintiffs have identified the existence of material facts in dispute preventing the Court from resolving the issue of the reasonableness of the detention. Accordingly, with respect to the claims of Oseguera and Mariah Catalan, the Court DENIES Defendants' motion as to the Section 1983 claim for unreasonable seizure.

With respect to Juan Catalan's Section 1983 claim for unreasonable seizure, Defendants posit four arguments: (1) probable cause existed for the arrest and detention of Juan Catalan; (2) Defendants are entitled to qualified immunity; (3) the district attorney's independent decision to file charges immunize Defendants from liability; and (4) Catalan suffered no harm as required by Section 1983 and his post-arrest incarceration claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

///

### A. Existence of Probable Cause

The Ninth Circuit has held that "probable cause exists when under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *U.S. v. Potter*, 895 F.2d 1231, 1233-34 (9th Cir. 1990).

Both parties provide evidence identifying facts known to the LAPD officers at the time they detained and arrested Catalan. Plaintiffs identify material facts in dispute regarding the existence of probable cause including the fact that (1) Martha Puebla did not testify against Catalan's brother, *see* Casselman Decl. ¶¶16-18;[2] (2) Defendants possessed a recording of Ledesma's jailhouse solicitation of another Vineland Boys gang member to murder Puebla, *see* Casselman Decl. ¶¶10-12, Pinner Dep. at 111-15; (3) the reliability of the Ibañez' identification was suspect both because his description of the suspect did not fit Catalan and because, during his first attempt to make an identification, he selected two persons bearing no or little resemblance to Catalan, *see* Casselman Decl. ¶19, Pinner Decl. ¶¶4-5, Shaw Dep. at 75, Jan. 6, 2004 Prelim. Hr'g Tr. at 245; (4) the credibility of Ibañez' was suspect given his status as a deportable alien, that he had a pending drug charge, and that he was a member of the Vineland Boys gang; and (5) Defendants did not investigate Catalan's background or whereabouts before arresting him, *see* Casselman Decl. ¶¶149-160, Pinner Decl. ¶19, Pinner Dep. at 247.

In light of the facts identified by Plaintiffs, there are material facts in dispute as to whether, under the totality of circumstances test, there was probable

---

[2] This calls into question Defendants' theory that Juan Catalan's motive for killing Puebla arose out of her testimony against his brother.

cause in existence at the time of the arrest and detention of Catalan.[3] Given these facts, there is a question as to whether a prudent officer would have concluded that there existed a fair probability that Catalan had committed a crime. Accordingly, in light of those disputes, Defendants' probable cause argument does not bar Plaintiffs' claims.

### B. Applicability of Qualified Immunity

Governmental officials performing duties within the scope of their employment are generally shielded from liability so long as their conduct did not violate clearly established constitutional or statutory rights which would have been known to a reasonable person. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Catalan's right to be free from unreasonable seizure was clearly established at the time of the arrest. The only issue, therefore, is whether the officers' actions were reasonable. Defendants argue the officers' conduct was reasonable both because it was based on probable cause and because the decision to arrest and detain was based on an arrest warrant.

The Ninth Circuit has held that in an action for unlawful arrest pursuant to a facially valid warrant, a police officer is entitled to qualified immunity unless, "no reasonable officer of reasonable competence would have requested the warrant." *Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 926 (9th Cir. 2001). The reasoning is that, upon request for a warrant, a judge reviews all of the

---

[3] Plaintiffs also argue that Defendants are barred by collateral estoppel from re-litigating the issue of probable cause in light of the state court's determination, during the preliminary hearing, that no probable cause existed. However, after reviewing the preliminary hearing transcript, this Court finds that the state court judge did not make a finding about the lack of probable cause to *arrest* Catalan. Rather, the judge explicitly noted Catalan's alibi in finding no probable cause existed to hold him for trial. The existence of the alibi, as Plaintiffs concede, was not made known to Defendants until after the time of the arrest. Accordingly, the Court finds that Defendants' probable cause argument is not barred by collateral estoppel because the issue sought to be precluded is not identical to the one decided in a prior proceeding. *Jacobs v. CBS Broadcasting*, 291 F.3d 1173, 1177-78 (9th Cir. 2002).

evidence and makes an independent determination of the existence of probable cause. However, at the February 27, 2006 hearing, counsel for Defendants clarified that no arrest warrant had been sought from a judge. While counsel admitted that he was not entirely clear on the procedure followed, he stated that he was under the impression that the officers took evidence to a prosecutor who filed a criminal complaint, and based upon the filing, Catalan was arrested. Absent an independent evaluation of the evidence by an impartial judge, Defendants are not entitled to the qualified immunity that flows from an arrest pursuant to a facially valid warrant. *Cf. Case*, 249 F.3d at 926 (warrant from neutral, detached judicial officer necessary). Additionally, having already found that material disputed facts prevent the finding of probable cause, Defendants are not entitled to qualified immunity.

### C. Immunity as a Result of Prosecutor's Decision to Charge

The Ninth Circuit has held that "[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981). The presumption can be rebutted if it can be proven that the district attorney was pressured or that the decision to charge was based solely on the police investigation rather than her own independent judgment. *See, e.g., id.* at 266-67. Where a plaintiff introduces evidence to rebut the presumption, the burden remains with the defendant. *Id.* at 267. However, *Smiddy* goes on to explain that, "if for reasons of privilege or otherwise relevant evidence is not available, no presumption will arise." *Id.* at 267-68.

Plaintiffs argue that the *Smiddy* presumption is rebutted because Defendants failed to provide the district attorney, Beth Silverman, with evidence

that would have led her to not charge Catalan. *See* Casselman Decl. ¶¶22-25, 30, 35-51. Silverman refused to answer questions regarding what information was given her by the officers, asserting the privilege. *Id.* Her invocation of privilege has prevented Plaintiffs from providing evidence regarding whether Silverman's decision was independent and free of pressure. As *Smiddy* makes clear, in such a situation, no presumption of independent judgment arises. 665 F.2d at 267-68. Accordingly, the Court finds that Silverman's decision to charge Catalan does not operate to immunize the officers' conduct.

**D.     No Harm Suffered and the Application of *Heck v. Humphrey***

Defendants argue that Catalan suffered no harm as a result of his post-arrest incarceration because the five months he was in custody for the Puebla murder were later credited against the sentence imposed as a result of a subsequent conviction for drug possession. A review of the time line of events belies the interpretation Defendants urge the Court to adopt. Catalan was arrested for drug possession, however, he was released on his own recognizance. Melnik Decl. ¶10. That Catalan was later granted custody credit for 160 days by the judge sentencing him for the drug possession conviction does not alter the fact that, after his August 12, 2003 arrest, he was in custody as a result of being charged with the Puebla murder, not the drug possession charge. Given that he was not sentenced on the drug possession conviction until January 8, 2004, Catalan could have suffered harm as a result of his time in custody.

Similarly, Defendants argue that claims arising from Catalan's post-arrest imprisonment are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* provides that

> in order to recover damages for allegedly unconstitutional imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by

///

executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Id.* at 486-87. Because his time in custody while charged with the Puebla murder were credited towards his drug possession sentence, Defendants argue that Catalan is essentially challenging his drug possession sentence without first meeting those requirements identified by *Heck*. However, as addressed above, Plaintiffs are not challenging the drug possession conviction nor the sentence imposed. Plaintiffs instead are challenging the time Catalan spent in custody on a murder charge for which a judge found there to be no probable cause to hold Catalan over for trial and no subsequent charges were filed. Accordingly, this argument does not bar Plaintiffs' claims.

Based on the foregoing analysis, the Court finds that none of Defendants' four arguments provides a basis for granting summary judgment to Defendants and accordingly DENIES Defendants' motion as to Plaintiffs' Section 1983 claim for unreasonable seizure.

### III. Plaintiffs' Section 1983 Malicious Prosecution Claim

In order to prove a claim for malicious prosecution under Section 1983, a plaintiff must show that the defendants (1) prosecuted him with malice, (2) without probable cause, and (3) that they did so for the purpose of denying him equal protection or another specific constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Malice, for purposes of the first element, is defined as "a wish to vex, annoy, or injure another person . . . the doing of an act for some improper or wrongful motive or purpose." *Poppell v. City of San Diego*, 149 F.3d 951, 962 (9th Cir. 1998). The purpose element of this cause of action requires that the defendant acted with knowledge or deliberate indifference to the rights at issue. *Id.* Plaintiffs present no evidence to satisfy the malice element of this cause of action, and without it, Defendants are entitled to

summary judgment. Accordingly, the Court GRANTS Defendants' motion for summary judgment with regard to Plaintiffs' Section 1983 malicious prosecution claim.

### IV. Plaintiffs' Section 1983 Interference with Familial Relationships Claim

Plaintiffs' complaint alleges that Defendants deprived Juan Catalan, Melissa Catalan, Mariah Catalan, Mario Catalan, and Magdalena Catalan of their familial relationships when they wrongly incarcerated Juan Catalan for nearly five months. *See, e.g., Woodrum v. Woodward County*, 866 F.2d 1121, 1124-25 (9th Cir. 1989). During that time, Plaintiffs argue, Juan Catalan and his daughters Melissa and Mariah were deprived of their relationship with one another. Additionally, Juan and his parents Mario and Magdalena were deprived of their relationship with one another. In response, Defendants assert the same four arguments raised in response to Plaintiffs' Section 1983 claim for unreasonable seizure. For the same reasons as stated above, Defendants are not entitled to summary judgment on these bases and the Court DENIES Defendants' motion with regard to Plaintiffs' Section 1983 interference with familial relationships claim.

### V. Plaintiffs' Section 1983 Municipal Liability Claim

Municipalities may be subject to liability under Section 1983 when, "under color of some official policy [it] 'causes' an employee to violate another's rights." *Monell v. Dept. of Social Services*, 436 U.S. 658, 692 (1978). Plaintiffs have asserted that Defendants have unconstitutional policies and practices of hiring unqualified personnel and retaining officers who poorly perform crime investigations. However, Plaintiffs fail to cite to any specific policy and fail to provide evidence to support their assertions. Plaintiffs' opposition with regard to this claim contains only argument. Accordingly, the Court GRANTS Defendants'

///

motion for summary judgment with regard to Plaintiffs' Section 1983 municipal liability claim.

### VI. Plaintiffs' Section 1983 Claims for Failure to Train and/or Supervise

"Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). While some courts have allowed a showing of gross negligence to make out a claim for failure to train, the more common rule requires a showing of deliberate indifference. *Id.* Defendants argue that Plaintiffs have not provided evidence supporting the existence of a failure to train or supervise.

Plaintiffs argue Defendants inadequately train and supervise their employees, resulting in unqualified personnel poorly performing crime investigations. Plaintiffs point to deposition testimony of LAPD detectives Coffey and Pinner to support their allegations. In his deposition, Det. Coffey testified that he "would have like to have known [about the alibi] in this particular case." Coffey Dep. at 34. Coffey was also unable to articulate specifics of how detectives were supervised throughout the course of the investigation. When asked what Captain Sweet did to supervise, Coffey stated, "nothing." Melnik Decl. This evidence suggests that Defendant supervisors had little first-hand knowledge of the investigation and exercised no oversight. Plaintiffs have identified material facts in dispute over the training and oversight present in this case. Testimony of LAPD detectives raise important questions about what supervision, if any, took place, and whether adequate training was given. Accordingly, the Court DENIES Defendants' motion for summary judgment with regard to Plaintiffs' Section 1983 claim for failure to train and/or supervise.

///

## VII. Plaintiffs' State Law Claims

### A. State Law Claim for False Imprisonment

In California, the false imprisonment cause of action consists of "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994). Defendants reassert the defenses that the officers had probable cause to arrest Catalan, that they are entitled to qualified immunity, and that Catalan's claims are barred by *Heck v. Humphrey*. Those arguments have been addressed above and the Court found that they did not entitle Defendants to summary judgment. Accordingly, Defendants' motion for summary judgment on Catalan's state law claim for false imprisonment is DENIED.

### B. State Law Claim for Violation of the Bane Act

Plaintiffs allege Defendants violated Cal. Civ. Code § 52.1, the Bane Act. The Act provides, in pertinent part,

> Any individual whose exercise or enjoyment of rights secured by the Constitution or law of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with . . . may institute or prosecute in his or her own name and on his or her own behalf a civil action for damages.

Cal. Civ. Code § 52.1. Courts have allowed parties to use the Bane Act to challenge constitutional violations such as false arrest and unreasonable seizure. *See Cole v. Doe*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005); *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2005). In their motion, Defendants raise the defenses of probable cause and qualified immunity. Those arguments having been addressed previously, the Court DENIES Defendants' motion for summary judgment with regard to Plaintiffs' claim for violation of the Bane Act.

## CONCLUSION

Based on the foregoing, the Court GRANTS Defendants' motion with regard to Plaintiffs' Section 1983 claims for (1) conspiracy to violate civil rights,

(2) malicious prosecution, (3) abuse of process, (4) municipal liability, and Plaintiffs' state law claims for (5) intentional infliction of emotional distress, (6) negligence, and (7) defamation.

The Court DENIES Defendants' motion with regard to Plaintiffs Section 1983 claims for (1) unreasonable seizure, (2) interference with familial relationships, (3) failure to train and supervise and Plaintiffs' state law claims for (4) false imprisonment and (5) violations of the Bane Act.

IT IS SO ORDERED.

DATED: June 8, 2006

CONSUELO B. MARSHALL
United States District Judge

- 14 -